UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
W. ROBERT CURTIS, ESQ.,

                    Plaintiff,

      - against -

TERESA P. GREENBERG, ESQ., THE LAW OFFICE OF YEUNG & WANG, P.L.L.C., WILLIAM J. LARKIN, III, ESQ., LARKIN, INGRASSIA, & TEPERMAYSTER, L.L.P., TODD A. KELSON, ESQ., TODD A. KELSON, P.C., MISHAEL M. PINE, ESQ., RONALD A. BERUTTI, ESQ., WEINER LAW GROUP, L.L.P., JEFFREY SALTIEL, ESQ., WENIG, SALTIEL, L.L.P., GREGORY SHEINDLIN, ESQ., SHEINDLIN LAW OFFICE, and NILOUFER BASSA,

                    Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-824 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

      Plaintiff, an attorney proceeding *pro se*, filed the Second Amended Complaint ("SAC") in this case on July 27, 2020. The SAC alleged violations of state law and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c) and (d), by Defendants Teresa Greenberg, Esq. and the Law Office of Yeung & Wang, P.L.L.C. (collectively, the "Greenberg Defendants"); William Larkin, III, Esq. and the law firm Larkin, Ingrassia, & Tepermayster, L.L.P. (collectively, the "Larkin Defendants"); Todd Kelson, Esq. and the law firm Todd A. Kelson, P.C. (collectively, the "Kelson Defendants"); Ronald Berutti, Esq. and the Weiner Law Group, L.L.P. (collectively, the "Berutti Defendants"); Jeffrey Saltiel, Esq. and the law firm Wenig Saltiel, L.L.P. (collectively, the "Saltiel Defendants"); Gregory Sheindlin, Esq. and the Sheindlin Law Office (collectively, the "Sheindlin Defendants"); Mishael M. Pine, Esq.; and Niloufer Bassa.

1

In addition to the substantive RICO claims, Plaintiff alleged conspiracy to commit RICO violations, breach of contract, breach of fiduciary duty, common law fraud, and violations of New York General Business Law Section 349, against various defendants. (SAC Volume II ("SAC II"), Dkt. 52-1 ¶¶ 505, 539–82.) He also appeared to allege a separate malpractice claim. (*See, e.g.*, *id.* ¶¶ 571–74.) Each defendant moved to dismiss for failure to state a claim. (*See* Dkts. 72, 90, 94, 98, 101, 106, 107, 112.)

On September 23, 2021, the Court granted Defendants' motions to dismiss ("September 23 Order"). *Curtis v. Greenberg*, No. 20-CV-824 (PKC) (LB), 2021 WL 4340788, at *19 (E.D.N.Y. Sept. 23, 2021). It dismissed Plaintiff's RICO claims with prejudice and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. *Id.* at 18–29. On October 21, 2021, Plaintiff moved for reconsideration under Federal Rule of Civil Procedure 59(e). (*See* Motion for Reconsideration ("Recon. Br."), Dkt. 125-1, at 1.) The motion for reconsideration was fully briefed on December 15, 2021. (*See* Dkts. 125–137.)[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure "59(e) allows a litigant to file a 'motion to alter or amend a judgment.'" *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting Fed. R. Civ. P. 59(e)). "A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (brackets omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked

---

[1] More detail regarding the allegations and procedural history in this case is available in the Court's prior decision: *Curtis*, 2021 WL 4340788.

– matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*

"Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotations and ellipsis omitted), *as amended* (July 13, 2012). "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703 (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163–64 (3d ed. 2012)). "The time for [seeking reconsideration under Rule 59] is short—28 days from entry of the judgment, with no possibility of an extension." *Id.* (citing Fed. R. Civ. P. 6(b)(2)).

Under Federal Rule of Civil Procedure 60(b)(3), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons of "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "A motion under [Rule 60(b)(3)] must be made . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

Under Federal Rule of Civil Procedure 60(b)(6), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Although "Rule 60(b) vests wide discretion in courts, . . . relief under Rule 60(b)(6) is available only in extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (quotations omitted). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors." *Id.* at 778. "These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's

3

confidence in the judicial process." *Id.* (quotations omitted). "A motion under [Rule 60(b)(6)] must be made within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1).

## DISCUSSION

Plaintiff seeks reconsideration on three grounds: (I) that the "Court made a fatal ruling on May 7, 2020 when it determined that the attorney-Defendants would be permitted to continue to conceal Plaintiff's files"; (II) that the Court's September 23 Order "misstates the identity of, and interconnections among, the entities of Enterprise 2"; and (III) that the September 23 Order "misperceives the interactions between Guardian Pine and Plaintiff" by "convert[ing] the psychological concept of 'substituted decision-making[]' . . . into a concept of 'interference.'" (Recon. Br., Dkt. 125-1, at 2–3, 26–27.)

### I. Plaintiff's First Argument

On April 13, 2020, Plaintiff moved to compel the production of files that he alleged Defendants had "withheld in violation of New York Law." (Dkt. 19, at ECF[2] 1.) On May 7, 2020, Magistrate Judge Lois Bloom denied the motion to compel as premature. (*See* Dkt. 26, at 2.) Judge Bloom explained that "the issue of whether or not [Plaintiff could] compel [Defendants] to release the file" was premature because it was "part of the relief that [Plaintiff was] seeking in [his] complaint," and because the case was "not even in discovery yet." (Hearing Transcript ("Tr."), Dkt. 27, at 23:7–11.) In his motion for reconsideration under Rule 59(e), Plaintiff argues that "the Court erred when conceptualizing Plaintiff's application as a request for 'premature' discovery," because it "instead was made to level the playing field," and "to be sure the facts

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

4

exclusively held by defendants could be brought to bear on the question of what happened." (Recon. Br., Dkt. 125-1, at 5.)

To the extent Plaintiff seeks reconsideration of Judge Bloom's May 7, 2020 order "under Fed. R. 59(e)" (*see id.* at 1), which authorizes a court to "alter or amend a judgment," Fed. R. Civ. P. 59(e), his request is untimely. As noted, the window to move for reconsideration under Rule 59(e) "is short—28 days from entry of the judgment, with no possibility of an extension." *Banister*, 140 S. Ct. at 1703 (citing Fed. R. Civ. P. 6(b)(2)). Plaintiff's reconsideration request, filed 532 days after Judge Bloom's order, plainly does not fall within the 28-day window.[3]

Is his reply in support of his motion for reconsideration, Plaintiff contends that although he "moved under Fed. R. 59(e), . . . it is of no moment since the Court automatically views it as a Rule 60(b) motion," which is not subject to the 28-day time limit. (Reply in Support of Plaintiff's Reconsideration Motion ("Recon. Reply"), Dkt. 137, at 3.)[4] But Rule 60(b) authorizes a court to "relieve a party or its legal representative from a *final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added)). That is, the "Rule applies only to final orders and judgments." *Harris v. Millington*, 613 F. App'x 56, 58 (2d Cir. 2015) (summary order) (citing Fed. R. Civ. P. 60(b); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir. 1989)). "The standard test for whether a judgment is 'final' for Rule 60(b) purposes is whether the judgment is sufficiently final to be appealed." *Ojeda v. City of New York*, No. 20-CV-3910 (EK) (LB), 2021 WL 3472505, at *1

---

[3] Although Plaintiff characterizes his reconsideration motion as "ask[ing] this Court to reconsider three parts of its [Order] *dated September 23, 2021*" (Recon. Br., Dkt. 125-1, at 1 (emphasis added)), his arguments regarding the file pertain to Judge Bloom's "ruling on May 7, 2020" (*id.* at 2), not the Court's September 23, 2021 Order.

[4] To the extent Plaintiff invokes Rule 60(b)(3) in his Reply, his reconsideration motion, filed 532 days after Judge Bloom's order, is still untimely. *See* Fed. R. Civ. P. 60(c)(1) ("A motion under [Rule 60(b)(3)] must be made . . . no more than a year after the entry of the judgment or order or the date of the proceeding.").

5

(E.D.N.Y. Aug. 6, 2021) (quotations omitted). "Generally, a final decision [for purposes of an appeal] is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *United States v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018). "[A] non-final discovery Order may not be reconsidered under Rule 60(b)." *Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S (HBS), 2016 WL 6962444, at *6 (W.D.N.Y. Nov. 29, 2016), *enforcement granted*, 2017 WL 1196469 (W.D.N.Y. Mar. 31, 2017), *on reconsideration*, 2017 WL 2720080 (W.D.N.Y. June 23, 2017); *see also Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 223 (N.D.N.Y. 1999) ("This Court's prior Order regarding a discovery issue was interlocutory in nature and, thus, not within the ambit of Rule 60."). Judge Bloom's order denying Plaintiff's motion to compel production of files, on the ground that it was "premature" because the case was "not even in discovery yet" (Tr., Dkt. 27, at 23:7–11), was not "a final judgment, order, or proceeding," Fed. R. Civ. P. 60(b), "end[ing] the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment," *Smathers*, 879 F.3d at 459. In fact, Judge Bloom's May 7, 2020 order preceded Plaintiff's filing of two amended complaints in this case. Plaintiff's first argument for reconsideration therefore is denied.

## II.    Plaintiff's Second Argument

Next, Plaintiff asks the Court to reconsider its September 23 Order because it purportedly "misstates the identity of, and interconnections among, the entities of Enterprise 2." (Recon. Br., Dkt. 125-1, at 3.) In the September 23 Order, the Court observed that "Plaintiff claims that Alleged Enterprise 2 comprises the Larkin Defendants, the Kelson Defendants, Pine, the Berutti Defendants, the Sheindlin Defendants, the Saltiel Defendants, and Bassa." *Curtis*, 2021 WL 4340788, at *14. Quoting from the SAC, the Court reiterated "Plaintiff['s] assert[ion] that Alleged Enterprise 2 'was incrementally and sequentially created by Larkin, Kelson, Pine, Berutti, and Saltiel over a period exceeding two years, and was operated by them for the purpose of improperly

6

liquidating Plaintiff's real property' and 'taking Plaintiff's money assets from through [sic] excessive and deceptive billing as his attorneys.'" *Id.* (*sic erat scriptum* in original) (quoting SAC II, Dkt. 52-1, ¶ 515).

In his reconsideration motion, Plaintiff argues that the "5 corporate-Defendants (all law firms), were explicitly alleged in the SAC to have formed the unlawful Enterprise 2, not the 12 individual and corporate units mistakenly identified by the Court in its Decision." (Recon. Br., Dkt. 125-1, at 13.)  He contends that "[t]he Court erred when applying the RICO requirements since it misunderstood the enterprise to contain a mix of 12 units, rather than the five law firms that wrongfully received and distributed Plaintiff's assets through a corrupted guardian as is pleaded." (*Id.* at 14.)

As a threshold matter, to the extent the Court included the individual Defendants in Alleged Enterprise 2, it relied on Plaintiff's assertions in the SAC that, for example: (1) "Alleged Enterprise 2 'was incrementally and sequentially created by Larkin, Kelson, Pine, Berutti, and Saltiel over a period exceeding two years, and was operated by them,'" *Curtis*, 2021 WL 4340788, at *14 (quoting SAC II, Dkt. 52-1, ¶ 515); (2) "Todd [Kelson], through Todd A. Kelson, P.C., (*as the second unit of Enterprise II*)," engaged in various fraudulent schemes (SAC, Dkt. 52, ¶ 101 (emphasis added)); (3) "Pine was employed by and associated with Enterprise II perhaps as its third unit," (*id.* ¶ 104); and (4) "Enterprise II engaged in" acts carried out by Kelson, Larkin, Pine, Berutti, Sheindlin, and Bassa, in their individual capacities (*see* SAC II, Dkt. 52-1, ¶ 521[5]).  These

---

[5] In his reconsideration motion, Plaintiff argues that a similar paragraph in the SAC regarding the acts of Alleged Enterprise 2 "clearly should have read 'Enterprise 2, *through the employees and individuals associated with it*,'" rather than merely "Enterprise 2."  (Recon. Br., Dkt. 125-1, at 13–14 n.5 (emphasis added).)  Thus, he contends, the Court should have inferred that he did not mean to say that Alleged Enterprise 2 included the individual Defendants.  Plaintiff asserts that he "obviously failed to run a 'spell-check' on the [SAC] to meet an almost-missed deadline thus uploading the SAC with numerous typos." (*Id.*)  For the reasons explained above,

7

allegations belie Plaintiff's assertion that the SAC "clearly and explicitly set forth" an enterprise that *did not* include Larkin, Kelson, Pine, Berutti, and Saltiel, but did include the law firms of which most of these individuals were named partners. (Recon. Br., Dkt. 125-1, at 3.) At best, the SAC was inconsistent with respect to the composition of Alleged Enterprise 2. But "where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (brackets omitted).

In any event, Plaintiff still fails to explain how the five law-firm Defendants formed a RICO enterprise. Although the Court used collective terminology—*e.g.*, "the Larkin Defendants"—to jointly reference the law-firm and individual-attorney Defendants, the Court's September 23 Order nevertheless concluded that the *law firms* were not a RICO enterprise either. For example, the Court observed that "[t]he Kelson Defendants"—*i.e.*, Todd A. Kelson, P.C., and Todd Kelson in his capacity as an attorney with that firm—"became involved in the Article 81 proceeding when Justice Onofry appointed them to represent Plaintiff." *Curtis*, 2021 WL 4340788, at *14. "The Berutti Defendants became involved with Plaintiff when their law firm"—*i.e.*, the Weiner Law Group, L.L.P.—"*replaced* the Larkin Defendants"—*i.e.*, Larkin, Ingrassia, & Tepermayster, L.L.P., and William Larkin in his capacity as an attorney with that firm—"as Plaintiff's counsel in his personal litigation matters." *Id.* (emphasis added). Wenig Saltiel, L.L.P. "became involved with Plaintiff when the court in one of Plaintiff's litigations appointed [Jeffrey Saltiel] as Receiver and manager of the Brooklyn Property." *Id.* The Sheindlin Defendants'—*i.e.*, the Sheindlin Law Office's, and by extension, Gregory Sheindlin's—"only involvement with

---

however, it was not clear what parts of the two-volume, "103-page, 582-paragraph SAC" accidentally omitted additional language Plaintiff meant to include, or included substantive "typos" Plaintiff meant to omit. *See Curtis*, 2021 WL 4340788, at *4 n.7.

Plaintiff arose when [the firm] represented an opposing party in a litigation against Plaintiff." *Id.* at *15. As the Court explained, "[t]he only link between all these Defendants"—*i.e.*, all these individuals *and law firms*—"is that they were involved in legal proceedings that concerned Plaintiff at some point between 2016 and 2019." *Id.* The Court thus concluded that the SAC did not adequately allege a RICO enterprise consisting of the law firms or any other Defendants. Thus, Plaintiff identifies no "controlling decisions or data that the court overlooked," *see Cho*, 991 F.3d at 170,[6] and his second argument for reconsideration is denied.[7]

---

[6] Because Plaintiff provides no basis for the Court to reconsider its decision as to Alleged Enterprise 2, the Court, in turn, rejects Plaintiff's argument that its "analysis of Enterprise 2" rendered its "application of the [pattern of racketeering activity] requirement . . . equally flawed." (Recon. Br., Dkt. 125-1, at 18.) In any event, Plaintiff's argument as to racketeering activity simply reiterates his contention that "[t]he SAC sets out the identity of four, not one, state cases in which racketeering activity took place," as well as "evidence that [Defendants sent] thousands of emails" and "hundreds of wire transfers." (*Id.* at 18–20 & n.10.) The Court already rejected this argument in its September 23 Order, explaining that "[a]lthough Plaintiff labels numerous mailings and communications as separate predicate acts, he ultimately alleges a single fraudulent act to deceive the state court into appointing a guardian so Alleged Enterprise 2 could take his property and assets." *Curtis*, 2021 WL 4340788, at *17. Plaintiff's disagreement with this alternative ground for dismissal is not a basis for reconsideration. *See Analytical Survs.*, 684 F.3d at 52 ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." (quotations and ellipsis omitted)).

[7] Plaintiff also argues that "the court seems to have mistakenly concluded that the SAC present[ed] 'open-ended' continuity," when "[i]n fact, the SAC present[ed] a closed-ended continuity." (Recon. Br., Dkt. 125-1, at 20.) There are at least four reasons Plaintiff's argument about continuity does not provide a basis for reconsideration. First, given that Plaintiff failed to adequately plead an enterprise, the lack of continuity was an independent ground for dismissal, unnecessary to the Court's decision. Second, Plaintiff's motion for reconsideration confuses open-ended with closed-ended continuity. He argues that "the SAC present[ed] a closed-ended continuity where the 'pattern' requirement [was] met by showing a threat of continuous criminal activity." (*Id.*) But the "*threat* of continuous criminal activity" test pertains to *open*-ended continuity. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) ("To satisfy *open*-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity . . . ." (emphasis added)); *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) ("Criminal activity that occurred over a long period of time in the past has *closed*-ended continuity, *regardless of whether it may extend into the future*." (emphasis added)). Plaintiff therefore is mistaken about the law when he argues that allegations of a threat of future criminal activity in the SAC would establish closed-ended continuity. Third, Plaintiff is also mistaken

9

### III. Plaintiff's Third Argument

Finally, Plaintiff asks the Court to reconsider its September 23 Order because "[t]he Court erred in not giving full weight to the true condition of Plaintiff during the multi-month course of his recovery." (Recon. Br., Dkt. 125-1, at 28.) Plaintiff contends that "the Court converted the psychological concept of 'substituted decision-making,' where individual attorney-Defendants made all life decisions about Plaintiff's assets by controlling his person, into a concept of 'interference' experienced by the guardian when Plaintiff's [*sic*] expressed his dissatisfactions." (*Id.* at 26–27.) By invoking the concept of "interference" rather than "substituted decision-making," Plaintiff contends, "[t]he Court improperly analyzed the allegations from the perspective of the guardian." (*Id.* at 28.)

Plaintiff apparently derives this argument from the Court's introductory summary of the case, where the Court described the SAC as "assert[ing] that Defendants misled New York courts about Plaintiff's need for a court-appointed guardian and then, when a guardian was appointed, sought to manage Plaintiff's assets against his interests without his interference." *Curtis*, 2021 WL 4340788, at *1. The Court used this terminology once more when it characterized the SAC as asserting that Alleged Enterprise 2 "deceiv[ed] the state court into appointing a guardian so

---

about the grounds for the Court's prior ruling, which included finding that the SAC failed to allege facts establishing *either* closed-ended or open-ended continuity. *See Curtis*, 2021 WL 4340788, at *17 (concluding that "this case resembles *First Capital*," where the Second Circuit found no open-ended continuity because the alleged fraud was "inherently terminable" (quoting *First Cap.*, 385 F.3d at 180–81), and no closed-ended continuity, in part because the alleged fraudulent acts "involved the same misrepresentations" (quoting *First Cap.*, 385 F.3d at 182)). Thus, in finding the SAC insufficient, the Court applied both tests. Fourth, to the extent Plaintiff disputes the Court's *conclusion* that the SAC failed to establish continuity, his argument is an improper attempt to use Rule 59(e) to "relitigate[e] old issues . . . or otherwise tak[e] a second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (quotations omitted).

Alleged Enterprise 2 could take [Plaintiff's] property and assets . . . without his interference." *Id.* at *17.

As an initial matter, Plaintiff's third argument is no more than an attempt at a "second bite at the apple." *See Analytical Survs., Inc.*, 684 F.3d at 52. But even were Plaintiff's argument proper on a Rule 59(e) motion, it does not provide grounds for reconsideration. First, among other deficiencies, the SAC failed to sufficiently allege the existence of a RICO enterprise. Plaintiff does not adequately explain how "the true condition of Plaintiff during the multi-month course of his recovery," or the Court's use of the term "interference" (Recon. Br., Dkt. 125-1, at 28), bear on whether an enterprise existed among Defendants. Second, Plaintiff's objection that "the Court converted the psychological concept of 'substituted decision-making[]' . . . into a concept of 'interference'" (*id.* at 26–27) amounts to a semantic and legally irrelevant disagreement, not "controlling decisions or data that the court overlooked," *Cho*, 991 F.3d at 170. The Court used the word "interference" in the introduction to its decision merely to help summarize "[t]he 103-page, two-volume SAC." *Curtis*, 2021 WL 4340788, at *1. That word choice has nothing to do with the substance of the Court's decision nor any legal principle or conclusion. *See Gotti v. United States*, No. 08-CV-7178 (HB), 2009 WL 2366465, at *2 (S.D.N.Y. Aug. 3, 2009) ("While Petitioner points out certain fine points of fact that he contends were improvidently stated in the [court's] Order and that he argues warrant correction, none of these contentions points to any facts that the court actually overlooked in its decision such that reconsideration of the facts could reasonably be expected to alter the conclusion reached by the court." (quotations omitted)). The Court therefore denies Plaintiff's third argument for reconsideration.[8]

---

[8] Plaintiff also argues that "[non-attorney Defendant] Bassa must be treated separately in this Motion for Reconsideration," and that "the Court omitted many facts alleged in the SAC about Bassa that should have been accepted as true for the purpose of deciding her motion to dismiss."

11

**CONCLUSION**

Plaintiff's motion for reconsideration is denied.  Plaintiff's request for oral argument is denied as unnecessary.  (*See* Dkt. 124.)  This case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  January 19, 2022
            Brooklyn, New York

---

(Recon. Br., Dkt. 125-1, at 22–23.)  To the extent the Court omitted factual allegations about Bassa, it did so because (1) the SAC failed to adequately allege the existence of an enterprise, so Bassa's individual "associat[ion] with and participat[ion] in the [alleged] schemes employed by Enterprise II" was immaterial (*see* SAC II, Dkt. 52-1, ¶ 518), and (2) the Court lacked jurisdiction over the remaining claims against Bassa, which arose under state law, *see Curtis*, 2021 WL 4340788, at *18.  Given that Plaintiff failed to adequately allege the initial element of a RICO claim, the Court's 37-page decision necessarily omitted many irrelevant allegations in the 103-page SAC.  Incidentally, the Court's decision *did* include many of the allegations about Bassa that Plaintiff accuses the Court of omitting. (*Compare* Recon. Br., Dkt. 125-1, at 24–25 (claiming, for example, that the Court did not mention that Bassa "has not paid rent for two years," "resides at The Brooklyn Property without the consent of Plaintiff," "occupies a furnished apartment otherwise used for AirBnB guests," "was employed by Plaintiff at $65,000 annually before she was terminated for cause," "has written and stated deceitful statements to the Court," and "supported the application by Berutti and Kelson for a guardianship"), *with Curtis*, 2021 WL 4340788, at *4 ("Bassa temporarily moved into a vacant apartment in the Brooklyn Property that Plaintiff owned.  Without Plaintiff's knowledge, Bassa remained in the apartment longer than he had offered to allow her to stay, during which time she did not pay rent.  Plaintiff also discovered that Bassa was working on a personal real estate business.  Plaintiff fired Bassa in September 2019, at which point she 'composed several e-mails and sent copies of them to Judge [sic] Onofry making utterly false statements to support of the [sic] Berutti and Kelson applications to have Pine re-appointed as guardian for Plaintiff.'" (record citations and brackets omitted) (*sic erat scriptum* in original))).

12